STATEMENT OF THE CASE.
On November 2, 1898, J. J. Wallace, plaintiff in error, filed a petition in the district court of Cleveland county, in words and figures as follows: *Page 340 
"Territory of Oklahoma, Cleveland County, In the District court. J. J. Wallace, plaintiff, v. The Town of Norman, defendant. Case No. 2266. Amended petition.
"Comes now the plaintiff, with leave of court, and, for his amended petition, alleges:
1. "The plaintiff is, and at all times herein mentioned was, a citizen of the United States of America, and of the Territory of Oklahoma, and a tinner and roofer by trade and occupation, having his residence in Oklahoma county, and a store and place of business in Oklahoma City, said Territory.
2. "The defendant is, and for many years last past was, a municipal corporation, and duly organized as a town under the laws of Oklahoma Territory.
3. "Among the first inhabitants of the lands embraced within the limits of the said town were, and from that time until the present constantly have been, a large number of lawless and seditious persons, the number and names of whom are unknown to the plaintiff, except as hereinafter stated, who, soon after the first settlement of said lands on April 22, 1889, entered into a conspiracy, which has ever since openly and notoriously existed, and is now existing, for the purpose of preventing, by means of threats and physical violence, the laboring, living, or lodging, within the corporate limits of the defendant town, of law-abiding colored citizens of the United States.
4. "In pursuance of said conspiracy, the said conspirators, within the past three years, the specific times being unknown to the plaintiff, and plaintiff being unable to more particularly give the details thereof, have openly and notoriously threatened, assaulted, beaten and driven from said town certain law-abiding colored citizens of the United States, named Frank Rogan, Robert Green, David Branham, Robert Ely, Morey Lee, and *Page 341 
others whose names are unknown to plaintiff, who have endeavored during said time to labor, live and lodge in said town, and by reason of said unlawful acts, at no time since the inception of said conspiracy, as aforesaid, has any colored person ever labored, lived or lodged in said town, or been permitted to do so, although many such persons, including those above named, and others whose names are unknown to plaintiff, have gone to such town for such purposes. The said conspiracy still openly and notoriously exists, and by reason thereof, no colored person whomsoever now labors, lives or lodges in said town, although many such persons, including those above named, and many others whose names are to the plaintiff unknown, who are law-abiding citizens of the United States, are desirous of going to said town, and of laboring, living and lodging therein.
5. "The plaintiff, on or abut July 10, 1898, went to the defendant town to perform certain work and labor in the line of his said trade, and took with him as an assistant in his employ, a law-abiding colored citizen of the United States, named George Rogan; and at said time, while engaged in said work in said town, and because of the presence and assistance of said colored person, and for no other reason, the plaintiff was unlawfully and maliciously set upon, threatened, assaulted and beaten on and about the head, eyes and body by said conspirators, to the number of twenty-five, or thereabout, each and every one being then unknown to the plaintiff, and whose names the plaintiff has been unable since to ascertain, by the exercise of due diligence, except as hereinafter stated, but which are well known to the defendant town, and all of the officers and agents thereof, including its president, trustees and marshal.
6. "The plaintiff, by said unlawful and malicious acts, at the time, place and manner aforesaid, was seriously and permanently injured in body and mind, in this, to-wit: That he was knocked senseless, sustained a fracture *Page 342 
of the skull, permanently lost the sight of his left eye, was under the care of a physician and nurse for sixty days, during which time he was unable to perform any labor, his nervous system was permanently shattered, he was permanently incapacitated for performing the labor necessary to a successful following of his said trade, and he was otherwise permanently injured, both mentally and physically, to the great damage of plaintiff, as follows, to-wit: that plaintiff has paid and become liable to pay, because of said injuries, doctor's bills amounting to $100, nursing and medicine, $100; other bills incidental to his said sickness, about $50; the income from personal labor at his said trade, aside from the store business, $5 per day since July 10, 1898, and he will be compelled to pay similar bills in future because of said injuries to an amount reasonably estimated at $2,000; that plaintiff has lost, because of said injuries, the business of his store in Oklahoma City for sixty days, having been compelled to close up the same because of his said injuries, for that length of time, $500, the good will of his said business, reasonably estimated at $1,000; the income from personal labor at his said trade in future, reasonably estimated at $5,000; that the loss of the sight of his left eye, as aforesaid, has damaged plaintiff in the sum of $5,000; that the skull fracture sustained by plaintiff, as aforesaid, has damaged plaintiff in the sum of $2,500; that the injury to plaintiff's nervous system, as aforesaid, has damaged plaintiff in the sum of $2,500; that the plaintiff has been otherwise damaged and is entitled to claim punitive damages in the sum of $5,000; all to the damage of the plaintiff in the sum total of at least $25,000.
7. "The defendant town, and all of its officers and agents, including its president, trustees and marshal, at all of the times herein mentioned, since the inception of said conspiracy as aforesaid, have had full notice and knowledge of the existence of said conspiracy, and of the names of said conspirators, and of the said unlawful *Page 343 
objects and purposes thereof, and of the said unlawful acts of violence done to the plaintiff, and of the said unlawful acts of violence committed by said conspirators, pursuant to said conspiracy, within the three years last past, and it has at all times been the duty of said town, and its officers and agents, to protect the plaintiff and said other persons against such injuries and wrongs, and to suppress said conspiracy and punish said conspirators, and to leave the plaintiff free to exercise his said trade in said town, with such assistance as he may desire to employ, colored or otherwise, but, notwithstanding said duty and instead of performing the same, the defendant town and all of its officers and agents, including its president, trustees and marshal, have become, and at all of the times herein mentioned were, parties to said conspiracy, aiding and abetting the said wrongs and injuries by acquiescing therein, and refusing to suppress said conspiracy, although said conspiracy could have been suppressed and abated by the exercise of ordinary care on the part of said town, or said officers and agents, and particularly did the said town and all of its officers and agents, including its president, trustees and marshal, aid and abet the wrongs and injuries so as aforesaid inflicted upon the plaintiff, in this, to-wit: that the fact of the existence of said conspiracy was notorious and a mater of common knowledge in said town, and the said president and trustees, with knowledge of the imminent danger of the plaintiff at the time and place and in the manner aforesaid, acquiesced in the unlawful, malicious and violent acts herein complained of, and refused and neglected to take any steps to prevent or suppress the same or protect the plaintiff, although with ample means and opportunity so to do, and the said town marshal, whose name, as plaintiff is informed and believes, is J. S. Davidson, (otherwise called "Long Jim,") with the consent and by the authority of the said town and all the inhabitants thereof, tacitly given, and particularly with the consent *Page 344 
and by the authority of the president and trustees of said town, tacitly and verbally given, to said marshal, said officers acting in their official capacity, and the said Davidson, acting in his official capacity as town marshal, was present at the time and place aforesaid, when said injuries were inflicted upon the plaintiff, and openly and audibly encouraged the commission of said injuries by words and acts, and wholly neglected and refused to make any effort to prevent said injuries or to arrest said conspirators, or to suppress said conspiracy or to protect the plaintiff, although such injuries could have been prevented by said marshal, and said conspirators by him arrested, and the plaintiff protected by the exercise of ordinary care on his part, or on the part of said president and trustees, and said town; that since the commission of said injuries the said president and trustees have indicated, tacitly and verbally, their approval and ratification of, and acquiescence in, said acts of said marshal, having full knowledge thereof, acting in their official capacity, for and on behalf of the defendant town, for its local and corporate benefit as hereinafter stated.
8. "The conspiracy aforesaid and wrongs pursuant thereto, as aforesaid, are calculated to inure, have inured and do inure, to the benefit of the defendant town, in its local and corporate capacity, in this, to-wit: That because of the existence of said conspiracy, numerous colored persons, including those above named and others, whose names are to the plaintiff unknown, and the plaintiff, with the colored person as assistant, have been, as aforesaid, and are prevented from working and laboring in said town, in competition with each and every and all of its inhabitants who are capable of doing work and labor; that in said town numerous trades, occupations and professions are carried on, and much day labor performed, each and every and all of which can well and capably be carried on by colored persons, particularly the said trade of the plaintiff; that the white *Page 345 
inhabitants of said town who carry on and perform said trades, occupations, professions and day labor, to the exculsion of colored persons, who are desirous of competing with them, are protected and benefited to the injury and damage of said colored persons, and said white persons enjoy an unlawful monopoly under the protection of the municipal authorities of said town, as aforesaid, and said colored persons and the plaintiff are deprived of their liberty and property without due process of law, and are denied the equal protection of the law, because of the existence of the aforesaid conspiracy and common nuisance.
"Wherefore plaintiffs prays judgment against the defendant for the sum of $25,000, and costs of suit."
On the 11th day of November, 1898, defendant filed a demurrer to said petition on the ground that said petition did not state a cause of action. On the 14th day of September, 1899, on hearing, the court sustained said demurrer. Plaintiff thereupon elected to stand upon his petition, and declined to amend. Whereupon, the court dismissed the cause at the cost of the plaintiff, to which ruling and judgment the plaintiff then and there excepted, and the case is brought here for review.
Opinion of the court by
The first assignment of error in this case is, and in fact the only assignment of error is, that the court erred in sustaining the demurrer of the defendant to the petition of the plaintiff, and in dismissing plaintiff's cause of action. The allegations of the petition are that a conspiracy existed among the inhabitants of the town of Norman, and that the object of said conspiracy was to prevent by means of threats and physical *Page 346 
violence, the laboring, living or lodging within the corporate limits of said town, of colored citizens of the United States. The only allegation in said petition in any way connecting said defendant, to-wit, the town of Norman, with said conspiracy, is in the seventh paragraph of said petition, wherein it is said:
"The defendant town, and all of its officers and agents, including its president, trustees and marshal, at all of the times herein mentioned, since the inception of said conspiracy as aforesaid, have had full knowledge and notice of the existence of said conspiracy, and of the names of said conspirators, and of the said unlawful objects and purposes thereof, and of the said unlawful acts committed by said conspirators pursuant to said conspiracy within the three years last past," etc.
We are at a loss to understand how a municipal corporation, such as the town of Norman, in its official capacity, and as a body corporate, could be a party to a conspiracy. We can understand how the officers, who, for the time being, may be exercising, in their official capacity, the authority delegated to a town or city, might, in their individual capacity, be a party to a conspiracy, but a municipal corporation, which is limited by law to the purposes and object of its creation, to-wit: the maintaining and exercising of the powers of local government, cannot, in its municipal capacity, be a party to a conspiracy. If the conspiracy existed as described in this petition, or, taking the petition and construing it by the ordinary rules of construction, it simply means that there existed, in the minds of the inhabitants of that locality, certain prejudices against the colored people; this, was a condition of the public mind, over which the corporate authorities of Norman *Page 347 
could exercise no rightful jurisdiction. The corporate authorities of a city or village may prescribe by ordinance as to the actions and conduct of the people; but no such village has a right to legislate, by ordinance, as to the thoughts, feelings, biases or prejudices that shall exist in the minds of the inhabitants who compose that particular locality. It is contended in plaintiff's brief that one of the subjects, over which authority is delegated to the city is, to provide means, "for keeping and preserving the peace and quietness of such town." This simply means that the town of Norman, in its official capacity, as a municipal corporation, shall have the right, and it shall be the duty, of such town, to make and pass all necessary ordinances: for the protection and welfare of the people in this particular.
There is no allegation in the petition that the municipal authorities of Norman have been requested to pass ordinances upon this subject and refused; there is nothing in the petition which tends to show that the ordinances already passed by the town of Norman, on this subject, are not such as are proper, lawful, legal and sufficient. Now, when a city has passed the necessary ordinances on any subject delegated to its charge, such ordinances become laws, enforceable by any person, and it becomes the duty of all persons to assist in their enforcement; in fact, ordinances of every state and village, like the laws of every state and territory, are enforceable on the application of any person, when such application is made to the proper tribunal or officer. While it is true, in this petition, the purpose of the conspiracy was clearly set forth, and its existence is positively alleged, still, there is nothing in the petition which *Page 348 
alleges any overt act of conspiracy, no definite details of such an organization, nothing that would show that such an organization had any tangible existence, by means of which it could be identified or suppressed by the city authorities of Norman.
Now if the contention of the plaintiff is true that it was the duty of the town of Norman to suppress, and abolish this alleged conspiracy, how could this have been accomplished, legally, by the city of Norman? It is a well known fact that the only mode of redress of grievances against its inhabitants by a city, and the only manner of enforcing any right delegated to them as a city, is by the pasing and enforcing of ordinances. Now if this conspiracy existed in consequence of or on account of the failure of the city of Norman to pass or enforce ordinances on the subject, then this failure should have been clearly and definitely set out in the petition of the plaintiff, but there is no such allegation; and not having so set out, we are constrained to presume that the city of Norman had passed necessary, proper and sufficient ordinances on this subject. When they have legally legislated by ordinance on the subject, they have then put it in the power of every citizen, who may live or be in said city, to apply to the proper courts for the enforcement of said ordinances, and for the punishment of every violation thereof. We cannot believe that under the law a municipal corporation can be accountable for the unauthorized acts of its servants, or the criminal acts of its employes, unless such acts are within the scope of the authority of such servants or employes. If acting beyond or outside the scope of their authority, then, in such acts, they are not the servants or employes of the city. *Page 349 
In Dillon, on Municipal Corporations, volume 2, second edition, page 877, in speaking of the liability of municipal corporations for the acts of its officers, it is said: "To create such a liability it is fundamentally necessary that the act done which is injurious to others must be within the scope of the corporate powers as prescribed by charter or positive enactment (the extent of which powers all persons are bound, at their peril, to know;) in other words, it must not be ultravires in the sense that it is not within the power or authority of the corporation to act in reference to it under any circumstances. If the act complained of lies wholly outside of the general or special powers of the corporation as conferred in its charter or by statute, the corporation can in no event be liable, whether it directly commanded the performance of the act, or whether it be done by its officers without its express command."
Again, the same distinguished author, at page 879, of the same volume, makes use of this language: "The principle that a corporation is bound by the acts of its officers, only when within the charter or scope of their powers, and that acts outside of the powers of the corporation, or of the officers appointed to act for it, are void as respects the corporation, is vital; and the opposite doctrine has no support in reason, and very little, if any, in the judgments of the courts."
In Dillon on Municipal Corporations, volume 2, second edition, page 868, the doctrine is laid down: "Public or municipal corporations are under no common law liability to pay for the property of individuals destroyed by mobs or riotous assemblages, but in such cases the *Page 350 
legislature may constitutionally give a remedy, and regulate the mode of assessing the damages."
In the case of Western College v. Cleveland, 12 Ohio State 375, it was held that a provision inter alia in the constituent act of the city, that it shall be the duty of the council to regulate the police of the city, preserve the peace, prevent riots, disturbances, and disorderly assemblages, had reference to the passage of ordinances to be enforced by officers appointed for the purpose, and did not make the city responsible for the riotous destruction of property, or the neglect of the officers, of the city in not preventing such destruction.
We are clearly of the opinion that in the absence of any legislative provision, making the city liable, they cannot be held liable for the acts of a mob, in the destruction of life and property. It is alleged in said petition that certain city officers, naming them, were present, aiding and abetting said riot and said mob, but it cannot be claimed, it seems to us, that when such officers were present, aiding, or assisting or abetting such mob, that they were then acting within the scope of their authority as officers of the defendant city, as a corporation, but that their acts, at that time, were in no way authorized by the city; but it seems to us that before the city could be held liable in this case, it must be shown, by the petition, that there has been some overt act done by the city, or some omission on the part of the city, of some duty enjoined on it by law. It seems to us, that, taking the allegations of the petition as true, the only thing the city government could have done by way of preventing the said mob from committing the *Page 351 
acts complained of, would have been to have passed ordinances on the subject, prohibiting the acts and prescribing the penalty therefor. And such petition does not allege that such ordinances were not passed by the city; and, as the passage of such ordinances would have been the proper exercise of the authority delegated in the premises, to the city, we think it proper to indulge in the presumption that the city authorities have done their duty in this particular, and that said ordinances were passed and in force.
It is alleged in the petition that various persons have been, in consequence of this conspiracy, assaulted, beaten and misused, but, it seems to us, these facts would not, of themselves, make the city liable. It certainly could not be contended that the city is liable for every injury that may result to a person in consequence of a violation of an ordinance, because that ordinance has been repeatedly violated. This petition states nothing more than that the plaintiff has been injured and damaged by a mob, or the unlawful act of a number of malicious persons, within the corporate limits of the city of Norman, and that the names of the persons so, committing such acts was known to the defendant. But we fail to see anywhere in the petition any allegation which would make the city of Norman liable as a municipal corporation. If unlawful acts have been done by individuals, whether such persons were holding municipal offices in said city of Norman or not, whereby the plaintiff has been damaged and has sustained injury, then such persons, in their individual capacity, are liable, and an action may be brought against them, but it seems to us there is nothing in this petition, when measured by the *Page 352 
well known and recognized principles of the law, that would make the city of Norman, as a city, liable. City authorities make rules to regulate the conduct of people within the limits of the city, but no city can, by law, regulate or control the thoughts, feelings or prejudices of the people. If the city can be held responsible for the likes and dislikes of its people, then, with equal propriety, could it be said, they are responsible for the health, religion or politics of the community. The secret thoughts, feelings, likes and dislikes, of the people are beyond legislative control; it is only the outward manifestations, as exemplified in conduct, that can be regulated and controlled by law. It might be beneficial to the human family, if by legislation, good health, and not disease, could be made contagious, but under the present system of jurisprudence, this cannot be done.
Hence, we think the demurrer to said petition was properly sustained. Finding no error in the record, the decision of the district court is affirmed.
Burwell, J., having presided in the court below, not sitting; all of the other Justices concurring. *Page 353